674 A.2d 276

**COMMONWEALTH of Pennsylvania**

v.

**Dennis W. BECKWITH, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Dennis W. BECKWITH, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Dennis W. BECKWITH, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1995.

Filed April 1, 1996.

Donald E. Speice, Public Defender, Hollidaysburg, for appellant.

Elizabeth A. Doyle, Assistant District Attorney, Hollidaysburg, for Commonwealth, appellee.

Before CIRILLO, TAMILIA and BROSKY, JJ.

TAMILIA, Judge:

Dennis W. Beckwith appeals from the March 21, 1995, twenty-one (21) to forty-two (42) month judgment of sentence [1] imposed after he was found guilty of terroristic threats,[2] simple assault,[3] recklessly endangering another person,[4]

1. On March 25, 1995 appellant was sentenced to eighteen (18) to thirty-six (36) months' imprisonment after a jury found him guilty of terroristic threats. After a bench trial, in which he was found guilty of indirect criminal contempt, appellant was sentenced to an additional three month period of incarceration to be served consecutive to that imposed for terroristic threats. This Court reasonably interprets the aggregate sentence imposed to be twenty-one (21) to forty-two (42) months.

2. 18 Pa.C.S. § 2706.

3. *Id.* § 2701.

harassment,[5] defiant trespass [6] and indirect criminal contempt.[7] Appellant was acquitted on charges of burglary, one count of simple assault and criminal trespass. The charges levied against appellant, which arose from a single incident yet were prosecuted separately, stemmed from appellant's violation of a Protection From Abuse (PFA) Order and his attack on the investigating police officer. For the purpose of appeal, the cases have been consolidated sua sponte.[8]

Appellant raises several issues for this Court's consideration, at least two of which require a detailed recitation of the events preceding appellant's arrest. On May 11, 1994, Sandra Miller, on behalf of her sixteen year-old daughter Jessica Miller, obtained a PFA Order prohibiting appellant from contacting Jessica, his girlfriend and the mother of his child, Samantha. The consent Order was signed by Jessica, her mother and the appellant. However, despite the Order, appellant and Jessica continued to live together until a day or two before July 18, 1994, the date of the incident in question. On that evening, at approximately 10:00 p.m., Jessica, her new boyfriend Shaun and daughter Samantha arrived at the second floor apartment Jessica shared with her mother, her younger brother and her mother's boyfriend. Shortly thereafter appellant knocked at the front door and, upon being rebuffed by Jessica, climbed through the bathroom window and began fighting with Shaun. Shaun ran out the front door, down the steps to the street, and appellant and Jessica followed him. Upon hearing the ruckus, the landlady, who lived in the first floor apartment, joined Jessica and appellant and informed appellant if he did not leave she would call the police. Appellant left and Jessica returned to her apartment. Appellant soon returned, however, and, upon once again being turned away, entered through the living room window. When a reconciliation conversation between the two proved futile,

4. *Id.* § 2705.

5. *Id.* § 2709.

6. *Id.* § 3503.

7. *Id.* § 5110.

8. Nos. 00835, 00908 and 00909 Pittsburgh, 1995.

appellant forcibly carried Jessica into a bedroom while attempting to muffle her screams with his hand. The victim's pounding on the floor alerted the landlady who called the police. Jessica testified that when appellant heard Officer Ann Walstrom knocking at the door he became enraged, grabbed a knife and chased the officer backwards down the stairs to the street. Officer Walstrom testified that as appellant rushed at her wielding the knife, he repeatedly shouted "I'm going to f——ing kill you." When a second officer arrived on the scene, appellant fled, only to be apprehended the following day.

Appellant was tried before a jury on charges which included, among others, defiant trespass and harassment. At a bench trial conducted six weeks later, allegations of indirect criminal contempt were addressed. Appellant contends the latter prosecution for indirect criminal contempt constituted double jeopardy since the charge alleged violation of the May 11, 1994 Order prohibiting him from contacting the victim, and the charge of defiant trespass had been previously been adjudicated. In other words, appellant argues prosecuting him for criminal contempt was a duplication or repetition of the defiant trespass and harassment charges prosecuted during the jury trial. Accordingly, appellant prays the conviction and related three-month term of imprisonment imposed consecutive to the eighteen (18) to thirty-six (36) months imposed on the terroristic threats conviction be vacated.

As stated *supra*, appellant was acquitted at trial of criminal trespass but found guilty of defiant trespass, receiving for the latter conviction an eight-month period of probation to be served consecutive to the incarceration for terroristic threats. The court found harassment merged with terroristic threats and imposed no further incarceration. Accordingly, we are faced with the query whether a violation of the PFA Order is a lesser included offense of defiant trespass, requiring vacation of the three-month sentence. To determine whether a defendant's protection against multiple punishments for the same offense has been violated, this Commonwealth applies the test set forth in

*Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): where the same act constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. *See Commonwealth v. Caufman,* 541 Pa. 299, 662 A.2d 1050 (1995); *Commonwealth v. Decker,* 445 Pa.Super. 101, 664 A.2d 1028 (1995). To be found guilty of defiant trespass, a person must, knowing he is not licensed to do so, enter or remain in a place as to which notice of trespass has been given by actual notice to the actor, posting of the property or fencing or enclosure to exclude intruders. 18 Pa.C.S. § 3503(b). To be found guilty of indirect criminal contempt, violation of the PFA Order in question, appellant must have had *any* contact, verbal or physical, with the victim. Mere overlap in proof between the two prosecutions doesn't establish a double jeopardy violation. *Caufman, supra.*

To be found guilty of defiant trespass appellant had to have entered and remained on victim's property, knowing he was not licensed to do so. Whether victim was at home at the time would be immaterial. Jessica was present at the time of the intrusion, however, providing the additional material element necessary to thereby trigger a violation of the existing PFA Order, resulting in indirect criminal contempt. This distinction was recognized in *Commonwealth v. Allen,* 506 Pa. 500, 486 A.2d 363 (1984), wherein it was found criminal trespass and indirect criminal contempt were separate offenses for double jeopardy purposes.[9] While the PFA Order issued herein prohibited any contact whatsoever with the petitioner, to be found guilty of defiant trespass appellant must have knowingly entered or remained in a place as to which notice

**9.** While the *Allen* Court consistently refers to the crime in question as criminal trespass, not defiant trespass, we believe the facts and reasoning are analogous to that before us. We acknowledge Judge Del Sole's Opinion in *Commonwealth v. Decker,* 445 Pa.Super. 101, 664 A.2d 1028 (1995), *infra,* finding the result reached in *Allen* is no longer valid in the Commonwealth, but note his finding does not refer to defiant trespass, but to subsequent prosecution for simple assault following a conviction for criminal contempt for violating a PFA Order.

against trespass was given; to wit: Jessica's apartment. The interests protected are distinct; the PFA Order protects the person while the crime of defiant trespass goes to the premises. The facts before us are distinguishable from those present in *Commonwealth v. Decker*, 445 Pa.Super. 101, 664 A.2d 1028 (1995), wherein this Court found double jeopardy barred prosecution of defendant for simple assault based on the same facts underlying his prior conviction for criminal contempt for violating a PFA Order enjoining him from physically abusing his wife and her children. Under the facts in *Decker*, the court found simple assault to be a lesser included offense of criminal contempt, the former offense containing no elements not included in the contempt charge. Each crime in *Decker*, assault and violation of the PFA Order proscribing abuse, went to the victim personally and contained the same elements necessary for conviction. Such is not the case here. Due to the different elements encompassed in each offense, we find double jeopardy did not attach and prosecution of the PFA Order violation following criminal prosecution for defiant trespass was not precluded.

■ Next, appellant argues the court erred by denying his motion in limine to preclude reference to the existing PFA Order, where violation of same was not at issue during the jury trial.

■ A judge has broad powers concerning the conduct of a trial, particularly with regard to the admission or exclusion of evidence. *Commonwealth v. Kunkle*, 424 Pa.Super. 499, 623 A.2d 336 (1993). Evidence is relevant and therefore admissible if it tends to make the existence of a fact material to the case more or less probable, tends to establish facts at issue or, to some degree, advances inquiry and thus has probative value. *Commonwealth v. Shain*, 324 Pa.Super. 456, 471 A.2d 1246 (1984).

Evidence of the existence of the PFA Order was necessary to explain the police course of conduct in responding to the disturbance on the evening in question. *See Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987). Also, the defense

chose not to take advantage of the January 25, 1995 Order wherein the court offered a curative instruction, if requested, worded to advise the jury the PFA Order was not indicative of a prior bad act but a civil remedy precluding defendant from contacting the victim. Appellant endured no undue prejudice as a result of the reference to the civil Order.

■ Appellant argues next that the court erred by imposing the deadly weapons enhancement on the charge of terroristic threats.

Deadly weapon enhancement shall be imposed when the court determines a deadly weapon, as defined by 18 Pa.C.S. § 2301, has been used during the commission of the convicted offense. 42 Pa.C.S. § 9721; 202 Pa.Code § 303(4). There shall be no such enhancement for convictions of an offense for which the possession of a deadly weapon is an element of the statutory definition. *Id.* Such is not the case here. Appellant charged toward Officer Walstrom, flailing a kitchen knife with a six to eight inch blade, and screaming "I'm going to f——ing kill you." The court properly enforced the deadly weapons enhancement provision, *see Commonwealth v. Magnum,* 439 Pa.Super. 616, 654 A.2d 1146 (1995) and, therefore, the eighteen (18) to thirty-six (36) month judgment of sentence imposed, solidly within the standard range guidelines, was proper, *see Commonwealth v. Gee,* 394 Pa.Super. 277, 575 A.2d 628 (1990).

Next, appellant contends the court erred by denying his motion for a mistrial and/or to strike the jury panel on the basis it was wrongly informed there was a PFA Order in effect at the time of the incident, and there was a pending complaint charging violation of that Order. Applying the reasoning set forth in our previous discussion, without further discussion, we find this argument devoid of merit.

■ Appellant also argues the prosecutor's comments during closing argument so prejudiced the jury as to prevent the panel from rendering a true verdict. The remarks in question allegedly misquote a purported stipulation between the parties and statements made by the defense during its opening.

Appellant also takes objection to a chart employed by the Commonwealth during summation, on which it listed the charges with which appellant was charged and the word guilty penned next to each charge. Appellant argues the statements and chart improperly appealed to the emotions of the jurors and reflected the prosecutor's personal opinion.

Without benefit of opening statements, this Court can only concur with the trial court's finding the statements made and the use of the chart were in proper response to defense arguments, were reflective of the evidence presented, and appellant was not unduly prejudiced. *See Commonwealth v. Marshall*, 534 Pa. 488, 633 A.2d 1100 (1993); *Commonwealth v. Brawner*, 381 Pa.Super. 265, 553 A.2d 458 (1989); *Commonwealth v. Durah–El*, 344 Pa.Super. 511, 496 A.2d 1222 (1985).

Lastly, appellant argues the harassment and indirect criminal contempt guilty verdicts were against the weight of the evidence. Specifically, appellant contends the Commonwealth failed to establish he was aware of the PFA Order, and his telephone contact did not constitute contact prohibited by the Order.

A true "weight of the evidence" claim contends the verdict is a product of speculation or conjecture. Such a claim requires a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Ables*, 404 Pa.Super. 169, 590 A.2d 334 (1991). A decision regarding the weight of the evidence is within the sound discretion of the trial judge whose decision will not be reversed on appeal absent an abuse of that discretion. *Commonwealth v. Fox*, 422 Pa.Super. 224, 619 A.2d 327 (1993). The record indicates the court took unobjected-to judicial notice of the PFA Order. On this basis, there was no error. Moreover, appellant's position throughout the trial was the PFA Order was a consent decree. Accordingly, we are curious why he now avers no knowledge of said Order, signed by him, which prohibited all contact, verbal or actual, with Jessica. (Commonwealth Exhibit A, paragraphs 2 & 6.) We find the verdicts to be consistent with the evidence presented.

Having found each of appellant's arguments devoid of merit, we affirm the judgment of sentence entered March 21, 1995.

Judgment of sentence affirmed.