J-S17002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN ROBERT SROMOVSKY, | |
| Appellant | No. 2365 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 7, 2018
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001137-2017

BEFORE: BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 05, 2019**

Appellant, John Robert Sromovsky,[1] appeals from the judgment of sentence of 2½-12 months' incarceration, imposed following his conviction for simple assault after a second trial. In his appeal, Appellant challenges the trial court's determination that his double jeopardy rights did not bar his second trial, that the court erred (at both trials) by refusing to admit video evidence depicting events that occurred after the assault, and that the Commonwealth engaged in prosecutorial misconduct. After careful review, we affirm.

---

[1] As Appellant was employed as a Pennsylvania State Trooper, and acting in that capacity when he committed the offense at issue, we also refer to him as "Trooper Sromovsky" in this memorandum. News reports indicate that Appellant was fired by the State Police following his sentencing in this case, however, that information is not contained in the certified record.

The trial court summarized the facts adduced at Appellant's first trial,[2]

held on November 15-16, 2017, as follows:

> On the evening of January 27, 2017, Trooper Revels of the
> Pennsylvania State Police made a vehicle stop. He determined
> that the operator[, Lorenzo Lopez,] was impaired and would be
> arrested for DUI. During the handcuffing of [Lopez], he tensed
> his arms causing the trooper and Officer Cavanaugh who was
> acting as backup to use a MODERATE degree of force to pull his
> arms behind his back and cuff him. This entire process was
> captured on Trooper Revels['] dash mounted camera. Once
> cuffed, [Lopez] became visibly upset and began to cry. When
> Trooper Revels went to place him in his cruiser, [Lopez] went limp
> and was uncooperative[,] requiring Trooper Revels and Officer
> Cavanaugh to … stuff him into the cruiser. At some point during
> the placing [of Lopez] into the cruiser, Trooper Revels said into
> his microphone, "he's fighting me." Those words resulted in six
> troopers responding to the scene of the vehicle stop. When they
> arrived, [Lopez] was seated in the front seat of Trooper Revels[']
> cruiser, was cuffed behind his back, was seat belted and, though
> crying, was otherwise not acting out.[1]
>
> > [1] These objective facts were recorded by Trooper Revels[']
> > dashboard camera[,] which he had turned to face [Lopez]
> > once [Lopez] was placed in the vehicle.
>
> When Trooper Sromovsky responded to the scene of the vehicle
> stop, he went immediately to the vehicle where [Lopez] was
> seated. He did not make any inquiry of Trooper Revels as to what
> had prompted the, "he's fighting me" statement. Upon seeing
> [Lopez], Trooper Sromovsky engaged him verbally[,] and the
> dashboard camera show[ed] that[,] shortly thereafter[,] [Lopez]
> was struck once, and possibly twice in the face.
>
> Trooper Sromovsky, contrary to Pennsylvania State Police Policy,
> did not report having struck [Lopez]. Neither did any other
> trooper on the scene[2] report that [Lopez] had been struck. Once
> Trooper Sromovsky's supervisors became aware of what had

---

[2] The trial court did not provide a separate summary of the facts for Appellant's second trial in its Pa.R.A.P. 1925(a) opinion, however, there is no indication in the record, or the parties' briefs, that the trials differed as to the underlying facts.

occurred[,] they investigated the matter and ultimately charged him with [s]imple [a]ssault, [o]fficial [o]ppression, [t]erroristic [t]hreats[,] and [h]arassment.

> [2] The record was unclear as to whether any other trooper actually saw the striking.

A jury trial was held from November 14 to November 16, 2017. The jury acquitted Trooper Sromovsky of [o]fficial [o]ppression and [t]erroristic [t]hreats. They hung on [s]imple [a]ssault.

During her closing argument, Assistant District Attorney [Cynthia B.] Morgan stated,

> the next thing that everybody talked about was Mr. Lopez somehow deserved to get hit, that because he was drunk, that because there was marijuana found in a car seat, that was a big thing, there was a child's car seat, so he's a really bad dude, he's a really bad person, he's an illegal immigrant. We never brought that out, but that was the first question on cross-examination. So because he's an illegal immigrant, because there was marijuana in the car and because he's drunk and intoxicated, that he somehow deserved to get hit.

[This satement] prompt[ed] defense counsel to move for a mistrial[,] which [the court] denied.

> The Commonwealth … signaled its intent to retry [Appellant] on [s]imple [a]ssault and [h]arassment[,] [which] prompt[ed] [Appellant to file a] [m]otion to [d]ismiss on double jeopardy grounds and/or for prosecutorial misconduct during the Commonwealth's closing argument.

Trial Court Opinion (TCO1), 2/16/18, at 1-2 (citation omitted). The trial court denied the motion to dismiss by order dated February 16, 2018, as indicated by the trial court docket; however, that order does not appear in the certified record.

Appellant's second trial occurred on May 14-16, 2018, at the conclusion of which the jury found Appellant guilty of simple assault.[3] Subsequently, on June 7, 2018, the trial court sentenced Appellant to 2½-12 months' incarceration. Appellant filed a timely post-sentence motion, which the trial court denied on July 31, 2018.

On August 8, 2018, Appellant filed a timely notice of appeal. He also filed a timely, court-ordered Pa.R.A.P. 1925(b) statement August 29, 2018. The trial court issued its Rule 1925(a) opinion on September 26, 2018, which substantially incorporates its February 16, 2018 opinion.

Appellant now presents the following questions for our review:

**Trial I**

i. Did the trial court err and abuse its discretion by denying [Appellant]'s post-verdict motion to dismiss the indictment on the grounds that re-prosecuting [him] would violate the provisions of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and the Constitution of the Commonwealth of Pennsylvania?

ii. Did the trial court err and abuse its discretion by denying [Appellant]'s request to play the entirety of the MVR video and take evidence from troopers and officers which depicted Mr. Lopez acting violently towards the arresting officers shortly after he was struck by [Appellant]?

**Trial II**

iii. Did the trial court err and abuse its discretion by denying [Appellant]'s request to play the entirety of the MVR video and take evidence from troopers and officers which depicted

---

[3] The trial did not include the charge of harassment, which the Commonwealth withdrew on June 7, 2018.

> Mr. Lopez acting violently towards the arresting officers shortly after he was struck by [Appellant]?
>
> iv. Did the trial court err and abuse its discretion in denying [Appellant]'s post-sentence motion to dismiss the indictment based upon prosecutorial misconduct?

Appellant's Brief at 3-4 (unnecessary capitalization omitted, issues renumbered).

We begin by addressing Appellant's double jeopardy claims, issues (i) and (iv). Appellant "argues that he cannot be re-tried [for simple assault] without being put twice in jeopardy for the same act and injury sustained by Mr. Lopez." *Id.* at 18. The trial court rejected this claim, reasoning that: "As the elements of [s]imple [a]ssault are not identical to those of [o]fficial [o]ppression, and as each require proof of an element the other does not require, retrial on the charge[] of [s]imple [a]ssault [is] not barred on double jeopardy grounds." TCO1 at 4-5. We agree with the trial court.

> "The Double Jeopardy Clause, applicable to the States through the Fourteenth Amendment, provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" ***Commonwealth v. Decker***, … 664 A.2d 1028, 1029 ([Pa. Super.] 1995) (citing U.S. CONST. amend. 5). "Furthermore, the Double Jeopardy Clause … protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." ***Id.***
>
> "To determine whether a defendant's protection against multiple punishments for the same offense has been violated, this Commonwealth applies the test set forth in ***Blockburger v. U.S.***, 284 U.S. 299 … (1932)." ***Commonwealth v. Beckwith***, … 674 A.2d 276, 279 ([Pa. Super.] 1996).
>
> The U.S. Supreme Court explained this test as follows:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696 … (1993).

> We note that "the 'same-elements' test of *Blockburger* has long been followed in this Commonwealth" and its application "requires a comparison of the elements of the offenses to determine whether each offense requires proof of a fact which the other does not." *Commonwealth v. Caufman*, 541 Pa. 299, 303 … ([Pa.] 1995) (citations omitted). When making such a comparison, overlap in proof between the two prosecutions does not establish a double jeopardy violation. *Beckwith*, 674 A.2d at 279.

*Commonwealth v. Jackson*, 10 A.3d 341, 344–45 (Pa. Super. 2010). The

statues in question are defined, in pertinent part, as follows:

**Official Oppression**

> A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:
>
>> (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or
>>
>> (2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

18 Pa.C.S. § 5301.

**Simple Assault**

> []Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

> (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another; …

18 Pa.C.S. § 2701.

Instantly, Appellant does not cite to any controlling authority holding that simple assault and official oppression contain the same elements under the ***Blockburger*** test. Rather, he offers a novel argument that "mistreatment" under the official oppression statute, 18 Pa.C.S. § 5301, constitutes the same conduct that is proscribed by the simple assault statute, 18 Pa.C.S. § 2701; therefore, he contends that simple assault is essentially a lesser-included offense of official oppression. ***See*** Appellant's Brief at 21-23. In support of this claim, Appellant directs our attention to ***Commonwealth v. Manlin***, 411 A.2d 532 (Pa. Super. 1979), citing the following passage from that opinion:

> The evidence of record in this case shows that [the] appellant struck and kicked three inmates of Lehigh County Prison without justification or excuse in the course of disciplinary hearings conducted by appellant in his official capacity as Deputy Warden of that prison. Examining the challenged statute in the light of the conduct with which appellant was charged, … it is obvious that [the] appellant should reasonably have understood that his conduct was proscribed by the statutory prohibition of "mistreatment." "Mistreatment" is clearly an ascertainable standard; it is in common usage, is equated with abuse, and has a commonly understood meaning.

***Id.*** at 533-34. Appellant argues that ***Manlin*** establishes that "mistreatment" and "abuse" are synonymous, and that the only "abuse" that occurred in this case was the striking of Mr. Lopez, which was the same conduct underlying his simple assault charge. Notably, the ***Manlin*** Court was dealing with the

- 7 -

question of notice under the void-for-vagueness doctrine; it was not addressing whether simple assault is a lesser-included offense of official impression. Accordingly, *Manlin* is off-point, and provides no support for Appellant's claim.

Applying the *Blockburger* test, the official oppression statute clearly includes elements not present in the simple assault statute. For instance, the official oppression statute requires the accused be a "person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity[,]" 18 Pa.C.S. § 5301, whereas the simple assault statute does not have such a requirement. A conviction for official oppression also requires that the accused know that his conduct is illegal, whereas the simple assault statute does not. The provision of the simple assault statute in question, by contrast, requires that the accused attempt or cause bodily injury, whereas, nothing in the official oppression statute requires proof of bodily injury or an attempt to cause bodily injury.

That the same conduct violated two statutes does not establish that double jeopardy bars prosecution and punishment for both offenses. *Beckwith*, 674 A.2d at 279 ("Mere overlap in proof between the two prosecutions doesn't establish a double jeopardy violation."). Accordingly, we conclude that the Commonwealth's prosecution of Appellant for simple assault

at his second trial was not precluded by double jeopardy principles following his acquittal for official oppression at his first trial.[4]

Alternatively, even assuming that simple assault is a lesser-included offense of official oppression as Appellant contends,[5] Appellant's second trial should not have been barred by his double jeopardy rights. As astutely noted by the Commonwealth, *see* Commonwealth's Brief at 10-12, because Appellant was tried for both offenses at his first trial, and because the jury acquitted him of the ostensibly greater-included offense, but failed to reach a verdict on the ostensibly lesser-included offense, his second trial for the lesser-included offense was not barred by his double jeopardy rights.

---

[4] Indeed, it is not surprising, especially in the context of this case, why a jury could arrive at different conclusions with regard to Appellant's guilt under each statute. Appellant admitted that he struck Mr. Lopez, and, in any event, the video evidence was conclusive as to that fact. However, Appellant stated his belief that his conduct was not illegal:

> Q. Having now reviewed the totality of the circumstances policies and the use of force policies, sir, do you believe today, as you did that evening, that your use of force with this individual was reasonable and necessary to effectuate the lawful arrest?
>
> A. Yes.

N.T., 11/15/17, at 153. Thus, if the jury found his testimony credible, it could not have convicted Appellant for official oppression. However, that specific defense was not applicable to the crime of simple assault. Indeed, although the first jury acquitted Appellant of official oppression, it could not reach a decision as to simple assault.

[5] "A comparison of the above noted statutes ([o]fficial [o]ppression and [s]imple [a]ssault) reveals that [s]imple [a]ssault is indeed a lesser-included offense of [o]fficial [o]ppression." Appellant's Brief at 21.

An analogous circumstance occurred in **Commonwealth v. Buffington**, 828 A.2d 1024 (Pa. 2003). In that case, the Commonwealth tried Buffington for both rape and the lesser-included offense of sexual assault. **Id.** at 1026. The jury acquitted him of rape, but failed to reach a verdict on sexual assault. The trial court then granted Buffington's motion to bar retrial on double jeopardy grounds. **Id.** at 1027. On appeal, the Superior Court reversed that decision, and our Supreme Court affirmed the reversal, reasoning that:

> Application of the double jeopardy bar is frequently addressed in the context of greater[-] and lesser[-]included offenses. For example, courts have held that, where a jury has not been charged on lesser[-]included offenses, an acquittal on the crime charged necessarily implies an acquittal on all lesser offenses encompassed by that charge, and, accordingly, double jeopardy would bar a second trial on a lesser included offense. This result [is] not obtained, however, in instances in which lesser-included offenses were expressly put before the jury, but the jury was unable to reach a verdict on those offenses. In such instances, the ordinary rule is that retrial on the lesser[-]included offense is constitutionally permissible.

**Id.** at 1029–30 (citations omitted).

Thus, even if Appellant is correct that simple assault is a lesser-included offense of official oppression, he is not entitled to relief, because he was tried for both offenses in his first trial and, despite returning a verdict of not-guilty on the charge of official oppression, the jury failed to reach a verdict on the charge of simple assault. Accordingly, **Buffington** is controlling in this case, and Appellant's retrial for an ostensibly lesser-included offense is not barred by double jeopardy principles.

We next address Appellant's second double jeopardy claim, in which he argues that his second trial should have been barred due to the Commonwealth's alleged prosecutorial misconduct in its closing argument during Appellant's first trial. In this regard, Appellant argues that the "prosecutor improperly and prejudicially injected race and Mr. Lopez's status as an illegal immigrant into the case in her closing argument…."[6] Appellant's Brief at 33. Appellant contends that that the prosecutor's conduct was intended to deprive him of a fair trial and, therefore, that his second trial was barred by double jeopardy.

> The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution prohibit retrial where prosecutorial misconduct during trial provokes a criminal defendant into moving for a mistrial. However, Article 1, § 10 of the Pennsylvania Constitution offers broader protection than its federal counterpart in that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.
>
> Pennsylvania has adopted a strict remedy for intentional prosecutorial misconduct: Under Pennsylvania jurisprudence, it is the intentionality behind the Commonwealth's subversion of the

---

[6] Appellant also argues that the Commonwealth made similar comments during his sentencing hearing. However, Appellant did not present a separate sentencing claim in his brief, in his statement of the questions presented, nor in his Rule 1925(b) statement, despite having raised a sentencing issue in his post-sentence motion concerning the Commonwealth's comments at the sentencing hearing. Accordingly, any sentencing claim related to the prosecutor's comments at Appellant's sentencing hearing are waived. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

court process, not the prejudice caused to the defendant, that is inadequately remedied by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial.

***Commonwealth v. Lynn***, 192 A.3d 194, 199–200 (Pa. Super. 2018) (cleaned up).

However, because of the compelling societal interest in prosecuting criminal defendants to conclusion, our Supreme Court has recognized that dismissal of charges is an extreme sanction that should be imposed sparingly and only in cases of blatant prosecutorial misconduct. A mere finding of willful prosecutorial misconduct will not necessarily warrant dismissal of charges.

***Commonwealth v. Wilson***, 147 A.3d 7, 13 (Pa. Super. 2016) (citation omitted).

Again, in the Commonwealth's closing argument during the first trial, the prosecutor stated:

The next thing that everybody talked about was Mr. Lopez somehow deserved to get hit, that because he was drunk, that because there was marijuana found in a car seat, that was a big thing, there was a child's car seat, so he's a really bad dude, he's a really bad person, he's an illegal immigrant. We never brought that out, but that was the first question on cross-examination. So because he's an illegal immigrant, because there was marijuana in the car and because he's drunk and intoxicated, that he somehow deserved to get hit.

N.T., 11/16/17, at 64. Appellant claims he immediately objected and requested a mistrial, however, the record suggests Appellant's account of events is inaccurate. Appellant's trial counsel immediately interjected: "Objection, your Honor. ***I would ask the jury be instructed***. This is an

outrageous argument. It has never been argued that his status as an illegal immigrant [was the] reason for the use of force in this case. It's outrageous."

*Id.* (emphasis added). Thus, Appellant requested a curative instruction immediately after the prosecutor's comment, not a mistrial.

However, Appellant did request a mistrial at the end of the Commonwealth's argument, at which time the following exchange occurred:

> [Defense Counsel]: [] I have a motion for mistrial. The outrageous statement made during the closing argument by the Commonwealth attorney that somehow my client operated upon the fact Mr. Lopez was an illegal immigrant and sought to injure him in light of that status is not only outrageous, it's unfounded in the record.
>
> What's worse is the Commonwealth filed with you a request to admit the fact that Mr. Lopez was an illegal immigrant and to establish on the record during this trial his status as an illegal immigrant. I opposed that exactly for the reason that was just argued to this jury, that the admission of that evidence would be irrelevant and highly prejudicial. This [c]ourt allowed it to come in.
>
> I assumed on the request of the Commonwealth, and at this point to have suggested to the jury with no basis in fact or law, that my client operated on that assumption to cause that man harm is so outrageous it can't be cured by an instruction.
>
> And secondly, should this [c]ourt grant the motion to [re]-try the case, I would ask that because of the intentional outrageous conduct of the prosecution [that] you preclude re-prosecution of Trooper Sromovsky.
>
> [Prosecutor]: Your Honor, Mr. Hoey's first cross-examination question of that witness was you're an illegal immigrant. That fact came out from the defense. That's what I pointed out to the jury. That fact is on the record. Mr. Lopez was an illegal immigrant. He was Spanish speaking. He was sitting in the custody of the trooper and this was brought out that he somehow deserved to be punched in the face because of his dangerous and his threatening conduct, which was not the case throughout the course of the trial.

- 13 -

[Defense Counsel]: Regrettably for the Commonwealth, it was never established that my client knew at any point in time, if we're parsing this out the way we have done it, in a test tube, that he has no idea what this fellow's status was when he approached him. Zero. To suggest otherwise compounds the outrageousness.

[Prosecutor]: Your Honor, I never said that Trooper Sromovsky knew that he was an illegal immigrant. I talked about the cross-examination of Mr. Lopez was to belittle him, bring out his immigration, and to talk about his civil suit. That is what I talked about.

[Defense Counsel]: Well, if that were the case, then why would the Commonwealth have asked you to introduce that evidence? Secondly, that's not what the Government argued. The Government argued if you are allowing somebody to beat somebody up because they're an illegal immigrant, you're condoning this behavior.

They never proved he knew that Lopez was an illegal immigrant or operated under that assumption to cause this man harm.

*Id.* at 72-74. The trial court did not explicitly deny Appellant's motion for a mistrial. However, the trial court did include the following instruction to the jury before they retired to deliberate:

Now, also during the closing arguments there were objections by both sides as to, well, they didn't say this and they didn't say that. And I told you when we began on Tuesday that when you went to the jury room, it was your recollection, and your recollection alone, that was going to control everything. And I also told you before counsel argued that it was your recollection of the facts that controlled. So what they remember is not relevant. It's what you remember and what you pulled out as the credible, believable evidence that you are going [to] make your decision based upon.

So to the extent that they argued factors that you don't find to exist in the record, you simply ignore it. If you find that they argued something not in accordance with your recollection, you ignore it. If they argued something that does not directly bear on the facts of this case, that is, the interaction between the defendant and Mr. Lopez, you don't consider that.

- 14 -

***Again, whether somebody should be treated in one manner or not because they are an immigrant has got absolutely nothing to do with the case. It's what occurred in the car between the defendant and Mr. Lopez. That's what we're looking to resolve.*** We're not sending any messages or anything else. We are deciding that fact pattern.

In addition to the testimony of the witnesses, you've heard the arguments of counsel. They are not part of the evidence and should not be considered as such. Again, they're there as an aide to help you in deciding the factual issues that you have to decide, having in mind that they argued in a way that favors the side they represent. Again, I remind you that it is the answers of the witnesses who appeared and testified before you and whose answers you found credible and believable that you are going to base your factual decision upon.

*Id.* at 91-92 (emphasis added).

Following the verdict, Appellant filed a post-verdict motion seeking to dismiss the indictment (and therefore bar retrial) based on the allegation of prosecutorial misconduct discussed above. In its opinion accompanying the order denying the motion, the trial court reasoned:

Unfortunately, when [the prosecutor] responded to defense counsel's argument[,] she made reference to Mr. Lopez's status as an "illegal immigrant." His status was NOT relevant to ANY issue in the case. While Mr. Lopez was questioned as to his immigration status by defense counsel …, it was NOT commented upon by defense counsel in his closing. It should not have been touched upon in the Commonwealth's closing. However, an improper reference in an otherwise permissible closing hardly evidences the egregious and pervasive conduct that is necessary to bar a retrial.

TCO1 at 5-6.

We agree with the trial court that the improper reference to Mr. Lopez's immigration status did not warrant the remedy of precluding a second trial as sought by Appellant. First, there was only a single, isolated reference to Mr.

- 15 -

Lopez's status during the Commonwealth's closing. Second, it was Appellant, not the Commonwealth, who first revealed Mr. Lopez's immigration status to the jury. *See* N.T., 11/15/17, at 68. Indeed, during Appellant's counsel's cross-examination of Mr. Lopez, multiple questions were asked about his immigration status and related deportation proceedings. *Id.* Third, the prosecutor's comment was not clearly referencing Appellant's intent at all. The comment could easily be read, as the prosecutor claimed, to have been commentary on what the prosecutor believed to be the attempted assassination of the victim's character, or victim-blaming, that Appellant's attorney ostensibly engaged in while cross-examining Mr. Lopez.

In the alternative, even if interpreted as a comment on Appellant's intent, rather than on Appellant's legal defense, the use of oratorical flair to suggest a motive for a crime is rarely grounds for a new trial, let alone grounds for the extreme remedy of barring retrial. "It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008). While Appellant suggested his motive for striking Mr. Lopez was merely to assert control, the jury was free to reject his testimony, and to find another motive for his actions. While proof of Appellant's knowledge of the victim's immigration status was not ironclad, there was at least some evidence that Appellant could have been acting on that belief, since Mr. Lopez was speaking in a mix of Spanish and broken English and had a

- 16 -

Latino appearance, combined with Appellant's otherwise inexplicable aggression toward a defenseless victim.

Fourth, the trial court's instructions to the jury strongly suggested to them that they should ignore any references to the victim's immigration status. Combined with the fact that Appellant first brought that status to the jury's attention, and the fact that the prosecutor's comment was brief and isolated, the prejudice suffered by Appellant was minimal. Accordingly, for these reasons, we conclude that the prosecutor's comment was neither intended to provoke Appellant into seeking a mistrial, nor was it intentionally made to to deprive Appellant of a fair trial, and that barring a retrial was far too extreme of a remedy in the circumstances of this case.

Finally, we address Appellant's remaining two claims, which present an identical issue. Appellant asserts that the trial court abused its discretion when it refused to permit him to introduce video evidence of Mr. Lopez's conduct that occurred after Appellant struck him. This matter arose when the Commonwealth filed a motion *in limine* to exclude all post-assault video evidence. **See** Commonwealth's Motion *in Limine*, 11/13/17, at 1-2. The trial court granted the motion. Appellant now argues that he

> was precluded from publishing to the jury that portion of the MVR [video] which records Mr. Lopez's violent and confrontational interactions with five (5) Pennsylvania State Troopers and one (1) Parkesburg Borough Police Officer that were required to utilize extensive force in bringing Mr. Lopez from [] Trooper Revels' vehicle to the caged State Trooper vehicle waiting nearby. That segment of the MVR lasts approximately ninety (90) seconds and immediately commences after Mr. Lopez was struck by Appellant. As such, it is temporally related to the instant offense and serves

- 17 -

to reiterate and confirm the fears that Appellant had at the time he encountered, argued with and struck Mr. Lopez, moments before Lopez violently confronted six (6) law enforcement officers during the transfer of his person to a caged vehicle. It is respectfully argued that the trial court abused its discretion by failing to permit the jury to view the approximately two minutes worth of video footage/audio footage of the Revels['] MVR which commenced immediately after Mr. Lopez was struck by Appellant.

Appellant's Brief at 24.

The trial court did not admit that portion of the video, reasoning that:

[Appellant] wished to show that after Mr. Lopez had been struck, that he, Mr. Lopez, resisted the troopers who were removing him from Trooper Revels' vehicle. [Appellant]'s theory being that this conduct … corroborated his … belief that Mr. Lopez required the use of force against him while seated in Trooper Revels' vehicle.

I ruled that what occurred after [Appellant] struck Mr. Lopez was irrelevant. It was irrelevant as the issue before the jury was what [he] knew from the radio communications he heard and what he observed upon arriving at the location of the stop through the moment he struck Mr. Lopez. Fortunately, all of this was OBJECTIVELY KNOWN by virtue of the audio and video played for the jury. What Mr. Lopez's behavior was subsequently neither proved nor disproved any of the facts the jury was to consider in determining the charges against [Appellant]. As such, it was clearly inadmissible.

Trial Court Opinion, 9/26/18, at 3.

We ascertain no abuse of discretion in the trial court's decision to grant the Commonwealth's motion *in limine*. At both trials, the jury was able to view video evidence corroborating Appellant's claim that force was required to detain Mr. Lopez before Appellant struck him. However, Mr. Lopez's conduct after that event was plainly irrelevant to Appellant's intent, as he could not possibly have been aware of Mr. Lopez's future conduct when he struck him.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/19