J-S04007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY ALLEN RUSHING | : | |
| | : | |
| Appellant | : | No. 1603 EDA 2019 |

Appeal from the PCRA Order Entered April 30, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004298-2017

BEFORE: BENDER, P.J.E., STABILE, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:               Filed: April 15, 2020

Appellant, Troy Allen Rushing, appeals from the order denying his timely petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

> On March 27, 2017 Appellant's wife, Janine Rushing ("the victim"), obtained a temporary Protection from Abuse Act ("PFA") order against Appellant. On th[e] same day, Appellant was served with the PFA Order. The PFA [order] in essence directed that Appellant stay away from the victim's home and have no contact with her.
>
> Later that same night, Appellant appeared outside the victim's house and attempted to enter using an old set of keys. Police were called, and when Appellant saw them, he fled from the police, who were unable to apprehend him.[1]
>
> ---
> [1] Appellant was charged with Loitering and Prowling because of this incident [at] CP-09-CR-0004278-2017. The charge of Loitering and Prowling at Night were *nolle prossed* as part

of [his] Open Guilty Plea on October 10, 2017. This charge was added as an amendment to CP-09-CR-0004298-2017.

On April 2, 2017, Appellant was seen by [the victim] looking at her through her kitchen windows. Again, the police were called to the home and[,] upon seeing the police, Appellant grabbed his bicycle and fled. He was ultimately apprehended and told the police that he "would not stop going to the victim's home and stop contacting her no matter what."

On April 4, 2017, the police responded to the call of [the victim] for another violation of [the] PFA order. This time, the call was made after the victim had received various harassing calls and text messages from Appellant. One of the messages stated that Appellant could see [the victim] sitting at [her] kitchen table. On April 5, 2017, the victim obtained a final PFA order against Appellant. Th[at] [o]rder reiterated that Appellant was precluded from any contact, directly or otherwise[,] with the victim.

On April 14, 2017, Appellant called and texted the victim and her sister-in law while they were together. His message indicated that he was watching them through [the victim's] kitchen window. The police were called and arrested Appellant after he attempted to flee.[3] In addition to criminal charges, Appellant was charged with indirect Criminal Contempt for violating a PFA order. On April 19, 2017, Appellant was found to be in contempt of the PFA [order] and sentenced to 40 days['] imprisonment.

[3] As a result, Appellant was charged with Loitering and Prowling, Stalking and Criminal Trespass [at] CP-09-CR-0004298-2017.

On October 10, 2017, Appellant entered an open [g]uilty [p]lea before this [c]ourt to Stalking,[4] Resisting Arrest,[5] and Loitering and Prowling at Night.[6] Prior to his guilty plea, Appellant executed a written guilty plea colloquy, advising him of his trial and post-trial rights. The written colloquy was incorporated into the record. Thereafter, Appellant's trial and post-trial rights were reviewed with him orally on the record. He was then advised of the elements of the offenses to which he was entering his plea; the maximum fines and penalties that could be imposed; and advised of the suggested guideline ranges. The [c]ourt made an independent determination that his guilty plea was … entered knowingly, voluntarily, intelligently[,] and of his own free will.

[4] 18 Pa.C.S.[] § 2709.1(A)(1). Stalking was graded as a felony of the third degree.

[5] 18 Pa.C.S.[] § 5104. Resisting Arrest was graded as a misdemeanor of the second degree.

[6] 18 Pa.C.S.[] § 5506. [Loitering and Prowling at Night was g]raded as a misdemeanor of the third degree.

Appellant was advised of the potential penalties [for each of these offenses].

Trial counsel raised an issue regarding Appellant's standard guideline range for Stalking. Counsel asserted that his New Jersey conviction, should make his prior record score 0 rather than 1, resulting in a sentence range of [3-12] months[' incarceration]. The Commonwealth calculated the range to be [6-14] months[' incarceration].[7] Appellant agreed to the facts as they were asserted by the Commonwealth, regarding the events of March 27, 2017, April 2, 2017, and April 14, 2017.

[7] PCRA counsel argues that the New Jersey disorderly conduct should have been classified as a summary offense. Although not stated directly on the record, [Appellant]'s record indicates that he had a prior misdemeanor conviction in addition to the New Jersey case. With the New Jersey conviction being classified by the Commonwealth as a misdemeanor assault, [Appellant]'s prior record score would be a [1]. However, if the New Jersey simple assault was treated as a summary offense, as Appellant argued, his prior record score would be a [0].

Next, Appellant claimed he accepted responsibility for his actions, stating "I know what I did was absolutely wrong." Prior to sentencing Appellant, the [c]ourt considered: [that] Appellant's statement lacked credibility; the victim impact statement; Appellant's admission of prior abusive relationships; Appellant's disregard of numerous court orders; Appellant's prior prison sentences; his continued stalking of [the victim]; prior PFA violations; and Appellant's mental health. Appellant was then sentenced to [1-3] years['] incarceration for Stalking, followed by a two (2) year period of probation for Resisting Arrest[,] with credit for time served.

On October 18, 2017, Appellant filed a timely Motion for Reconsideration of his sentence. A hearing was held on November

29, 2017. During the hearing, Appellant's trial counsel discussed his initial issues with Appellant's prior record score. Counsel reasserted his argument that the guidelines should have been lower since his New Jersey conviction was improperly considered. Appellant also asserted that he wanted to give a better impression than the one he gave during his sentencing. Following the hearing, the [c]ourt denied Appellant's motion. No direct appeal was filed and judgment became final on December 29, 2017.

On December 13, 2017, Appellant submitted his first *pro se* PCRA petition, which was denied as prematurely filed.[8] On January 12, 2018, Appellant filed his second *pro se* PCRA petition. An [a]mended petition was filed by assigned counsel alleging ineffective assistance of Appellant's trial counsel. On October 12, 2018, the [c]ourt conducted an evidentiary hearing.

> [8] This petition was premature because it was filed within the thirty-day period [Appellant] had to file a direct appeal.

At this hearing, Appellant alleged multiple claims of ineffective assistance of trial counsel. Counsel for the Commonwealth and Appellant stipulated that if Appellant's New Jersey attorney were called to testify, he would say that in New Jersey, a simple assault charge[9] would be classified as a disorderly persons offense. PCRA counsel argued that Appellant's disorderly persons offense should not have been graded as a misdemeanor. In response, the Commonwealth argued that the New Jersey simple assault was properly considered a misdemeanor since it was identical in language to Pennsylvania's simple assault charge.[10]

> [9] New Jersey['s] statue defines simple assault as: "(1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (2) Negligently causes bodily injury to another with a deadly weapon; or (3) Attempts by physical menace to put another in fear of imminent serious bodily injury. Simple assault is a disorderly persons offense unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty disorderly persons offense." N.J.S. § 2C:12-1(a).

> [10] Pennsylvania['s] statute defines simple assault as: (I) attempts to cause or intentionally. knowingly or recklessly causes bodily injury to another; (2) negligently causes bodily injury to another with a deadly weapon; (3) attempts physical menace to put another in fear of imminent serious bodily injury; or (4) conceals or attempts to conceal a

hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person. 18 Pa.C.S.[] § 2701. In Pennsylvania, a simple assault is generally graded as a misdemeanor of the second degree.

Trial counsel testified that he had represented Appellant for his PFA and criminal cases. Prior to Appellant's plea of guilty, he had requested discovery, but had not received anything beyond the complaints, affidavit of probable cause, and the PFA allegations. Despite this, trial counsel decided to proceed with the guilty plea without further discovery, as he felt that he knew enough of the facts of the case.

Additionally, trial counsel testified that when he reviewed the written guilty plea colloquy with Appellant that he marked the form, but that Appellant signed the document. Counsel also averred that Appellant asked for reconsideration of his sentence because he wanted to convince the sentencing court to give him a lower sentence. Trial counsel also averred that he did not consider double jeopardy to be an issue with regard to Appellant's criminal contempt and his stalking charges.

Regarding the Domestic Violence Investigation [("DVI")] report, trial counsel attested that he had reviewed the report and went over the document, as did Appellant prior to his sentence. Counsel also reviewed with Appellant the rights he would be giving up with his guilty plea. Appellant neither raised an objection to this statement nor denied reviewing and signing the written guilty plea colloquy. After Appellant was sentenced, trial counsel gave the original DVI report to Appellant's mother, who mailed it to Appellant about five months later.

Next, Appellant testified claiming that he was not informed of his waiving certain pretrial and post-trial rights by pleading guilty. Appellant did admit to being informed prior to pleading guilty of counsel's legal strategy regarding the outstanding discovery in light of his guilty plea. He also admitted to having an opportunity to review the DVI report prior to pleading guilty. It was only later, during his PCRA petition when Appellant asserted that some of the contents of the DVI report "hadn't even happened and some things that had been presented in a light that I don't think is accurate and I think with explanation are going to look a whole lot

different. And I believe that report influenced my sentence greatly."

Only at the PCRA hearing does Appellant claim that he did not answer any of the questions on the written colloquy form and that he would have answered a few of the questions differently if he had. However, Appellant never denies initialing and signing the colloquy form. Instead, on multiple occasions while Appellant [was] on the record, he asserted that (1) it was always his intent to plead guilty; (2) he "owned" all of the instances where he violated the PFA and resisted arrest; and (3) he wanted another chance to present a better case during his allocution.

Appellant admitted that he "never planned on not pleading guilty[.]" In fact, he stated that he might even plead guilty if granted a new trial. Additionally, Appellant states that the only claim he really felt that he had was based on double jeopardy.[11] Only once during arguments during Appellant's PCRA hearing two years later, did he say that he would not have ple[]d guilty if he had known about the double jeopardy issue, and would have moved to have the charges dismissed.

> [11] [Appellant] stated that he believed double jeopardy was appropriate because after being found in contempt of the PFA against him he was "hit with criminal charges later for the same course of events[.]" Later, [he] explain[ed] that he believed that he was pleading guilty during his PFA contempt hearing in April 2017.

Next, Appellant asserted that he was not being honest during his sentencing hearing, despite being under oath. He further alleged that he did not answer any of the oral colloquy questions asked by the [c]ourt. It should be noted that at no point on the record does Appellant state that he did not desire to plead guilty. He agreed to the facts of the case as summarized by the Commonwealth, although Appellant later asserts that this was also a false statement. This is in direct conflict to Appellant's statements made during his reconsideration hearing where he affirmed that he was speaking the truth in agreeing to the Commonwealth's restatement of the facts and that he initiated and signed the written colloquy. Also, Appellant admitted that when he was given his chance to speak during his guilty plea colloquy, he did not object to pleading guilty or ask for a continuance.

At the conclusion of the PCRA hearing, this [c]ourt did not find Appellant's testimony to be credible but found trial counsel's testimony credible. Additionally, the [c]ourt found that … Appellant did not show that he was prejudiced by counsel's course of action such that he would not have ple[]d guilty.

At the conclusion of the PCRA hearing, the [c]ourt took the matter under advisement. On April 30, 2019, the [c]ourt sent out an order denying Appellant's PCRA petition. This timely appeal was filed.

PCRA Court Opinion ("PCO"), 8/14/19, at 1-7 (citations omitted).

Appellant filed a timely, court-ordered Pa.R.A.P. 1925(b) statement.

The trial court issued its Rule 1925(a) opinion on August 14, 2019. Appellant

now presents the following question for our review:

Did the trial court err by denying the [PCRA] petition[,] … where Appellant received ineffective assistance of counsel, evidenced by a guilty plea without reviewing discovery, allowing sentencing on a miscalculated prior record score, and failing to seek the dismissal of the criminal case based upon double jeopardy following his [PFA] order conviction?

Appellant's Brief at 4.

Our standard in reviewing a PCRA court order is abuse of discretion. We determine only whether the court's order is supported by the record and free of legal error. This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. We will not disturb the PCRA court's findings unless the record fails to support those findings.

A criminal defendant has the right to effective counsel during a plea process as well as during trial. A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty.

We conduct our review of such a claim in accordance with the three-pronged ineffectiveness test under section 9543(a)(2)(ii) of the PCRA. The voluntariness of the plea depends on whether

- 7 -

counsel's advice was within the range of competence demanded of attorneys in criminal cases.

In order for [an] [a]ppellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. [The] [a]ppellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The petitioner bears the burden of proving all three prongs of the test. Moreover, trial counsel is presumed to be effective.

*Commonwealth v. Rathfon*, 899 A.2d 365, 368–69 (Pa. Super. 2006)

(internal citations and quotation marks omitted).

Initially, we note the Commonwealth's argument that:

[T]o the extent Appellant is … seeking relief on his claims that counsel was ineffective for failing to review full discovery or properly challenge the calculation of his prior record score, these claims are waived. Appellant has put forth no argument with respect to either such claim. He has one lone sentence at the end of his brief claiming that counsel was ineffective for failing to pursue those issues. The brief is void of any facts, law or argument to support this contention. Appellant's bald statements do not entitle him to relief and his abandonment of these claims results in waiver. He is, therefore, not entitled to relief on this basis.

Commonwealth's Brief at 19.

We agree with the Commonwealth. Appellant provides no meaningful discussion or analysis of those issues in his brief. When "an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review,

- 8 -

that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009).

Appellant preserves one claim for our review, which is whether trial counsel was ineffective for failing to seek dismissal of the criminal charges filed against him or other relief based on double jeopardy principles. He asserts that his previous prosecution for contempt for violating the PFA order ("contempt conviction") was for the same conduct that formed the factual basis of the criminal charge of stalking at issue in this case. Trial counsel did not raise this issue in a pre-trial motion, at the plea hearing, during sentencing, or in a post-sentence motion. As the bulk of Appellant's sentence was for stalking, he was ostensibly prejudiced by counsel's failure to raise a double jeopardy claim before Appellant entered a guilty plea, assuming it would have been successful. Thus, whether trial counsel was ineffective turns on the merit of the underlying double jeopardy claim.

> "The Double Jeopardy Clause, applicable to the States through the Fourteenth Amendment, provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *Commonwealth v. Decker*, … 664 A.2d 1028, 1029 ([Pa. Super.] 1995) (citing U.S. CONST. amend. 5). "Furthermore, the Double Jeopardy Clause [] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id.*
>
> "To determine whether a defendant's protection against multiple punishments for the same offense has been violated, this Commonwealth applies the test set forth in *Blockburger v. U.S.*, 284 U.S. 299 … (1932)." *Commonwealth v. Beckwith*, … 674 A.2d 276, 279 ([Pa. Super.] 1996). The U.S. Supreme Court explained this test as follows:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "***Blockburger***" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.

***United States v. Dixon***, 509 U.S. 688, 696 … (1993).

> We note that "the 'same-elements' test of ***Blockburger*** has long been followed in this Commonwealth" and its application "requires a comparison of the elements of the offenses to determine whether each offense requires proof of a fact which the other does not." ***Commonwealth v. Caufman***, … 662 A.2d 1050, 1052 ([Pa.] 1995) (citations omitted). When making such a comparison, overlap in proof between the two prosecutions does not establish a double jeopardy violation. ***Beckwith***, 674 A.2d at 279.

***Commonwealth v. Jackson***, 10 A.3d 341, 344–45 (Pa. Super. 2010).

Appellant argues that there are substantial factual overlaps between his contempt conviction and his conviction in this case for stalking, as reflected in the criminal complaints at issue. Appellant's Brief at 12-13. However, while factual overlap is a necessary predicate to a double jeopardy claim, it is alone insufficient to establish a double jeopardy violation. ***Jackson***, 10 A.3d at 45 (citing ***Beckwith***, 674 A.2d at 279). As noted above, we must also apply the ***Blockburger*** test to the elements of Appellant's stalking and contempt charges. Appellant provides no discussion of the ***Blockburger*** test in his brief.

The PCRA court determined that double jeopardy did not bar Appellant's prosecution for stalking based its analysis of the two at-issue offenses under the **Blockburger** test, reasoning as follows:

> Here, Appellant was found in contempt for violating the "no contact" provision of the PFA [o]rder. "No contact" encompasses a broad range of conduct beyond the elements contained in the offense of stalking.

> In applying **Blockburger**, this [c]ourt found that double jeopardy does not apply with his subsequent conviction for stalking. With respect to the crime of stalking, a person is in violation if they intentionally, repeatedly and without permission place another person in reasonable fear of bodily injury or cause substantial emotional distress. 18 Pa.C.S.[] § 2709.1(a)(1). In contrast, a conviction for indirect criminal contempt is warranted where: (1) the PFA order is clear that no contact either direct or indirect is allowed; (2) there is notice of the PFA [o]rder; (3) there was willful contact despite the terms of the PFA; and (4) there was wrongful intent. **Commonwealth v. Brumbaugh**, 923 A.2d 108, 110 (Pa. Super. 2007). Comparing these elements, it is clear that stalking is not a lesser-included offense as both offenses have different elements.

PCO at 10-11.

We detect no legal error in the PCRA court's analysis. With respect to the crime of stalking, Appellant was charged with engaging "in a course of conduct or repeatedly commit[ting] acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa.C.S. § 2709.1(a)(1).

> To establish indirect criminal contempt, the Commonwealth must prove: 1) the [o]rder was sufficiently definite, clear, and specific

to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the [o]rder; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Brumbaugh*, 932 A.2d at 110.

Contempt contains two elements that are not required to prove the crime of stalking under Section 2709.1(a)(1), both concerning the presence of a pre-existing no-contact order. Stalking requires a course of conduct or repeated acts, whereas a single act is sufficient to prove contempt. Additionally, stalking requires an intent to create fear or emotional distress in the victim, an element not required to establish contempt. Thus, *Blockburger* dictates that Appellant's stalking and contempt convictions do not violate double jeopardy principles, even if both offenses arise out of the same act.

Moreover, to establish a course of conduct or repeated acts for the purpose of proving stalking, the Commonwealth necessarily had to prove multiple acts, and the record supports the conclusion that Appellant repeatedly menaced the victim. Hence, Appellant's conviction for stalking was not premised upon any individual act. However, with regard to contempt, Appellant could violate the PFA order with a single act. It stands to reason that Appellant's stalking conviction does not violate double jeopardy because it was not complete based on the commission of any individual act that constituted contempt.

For these reasons, we conclude that Appellant was not prejudiced by his trial attorney's failure to challenge his stalking charge, conviction, or sentence

on double jeopardy grounds. Thus, Appellant's only preserved ineffective-assistance-of-counsel claim lacks merit. ***See Commonwealth v. Philistin***, 53 A.3d 1, 10 (Pa. 2012) (stating that the "[f]ailure to prove any prong" of the three-prong ineffectiveness test "will defeat an ineffectiveness claim").

Order ***affirmed***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/15/20