Beth E. HILL, Appellee

v.

Earl H. RANDOLPH, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 1, 2010.

Filed June 1, 2011.

James J. Karl, Lancaster, for appellant.

Daniel J. Dye, Lancaster, for appellee.

BEFORE: STEVENS, SHOGAN, and COLVILLE *, JJ.

OPINION BY STEVENS, J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lancaster County after the trial court convicted Appellant on two separate counts of indirect criminal contempt ("ICC") arising from a single episode in which Appellant entered the home of Plaintiff Beth Hill and assaulted her in violation of a standing Protection from Abuse ("PFA") order. Herein, Appellant argues that the court contravened the legislative intent behind the PFA Act along

* Retired Senior Judge assigned to the Superior Court.

with his constitutional rights to a jury trial and to be free from double jeopardy when it convicted him on multiple ICC charges and imposed an aggregate sentence exceeding six months' incarceration. We infer nothing in the PFA Act[1] to bar prosecution of multiple ICC charges arising from different violations of the same order, nor are double jeopardy or trial-by-jury rights implicated in the facts before us. Accordingly, we affirm.

On April 9, 2007, the trial court issued a PFA order that provided, *inter alia*, the following:

1. Defendant shall not abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to Plaintiff or any other protected person in any place where they may be found.

2. Defendant is completely evicted and excluded from the residence at:

**EXCLUDED FROM: 16 E. FREDERICK ST., LANCASTER, PA 17602**

or any other residence where Plaintiff or any other person protected under his order may live. Exclusive possession of the residence is granted to Plaintiff. Defendant shall have no right to enter or be present on the premises of Plaintiff or any other person protected under this order.

3. Defendant is prohibited from having **ANY CONTACT** with Plaintiff either directly or indirectly, or any other person protected under this order, at any location, including but not limited to any contact at Plaintiff's or other protected party's school, business, or place of employment. Defendant is specifically ordered to stay away from the locations for the duration of this order.

**16 Frederick St., Lancaster, PA 17602**

**Outdoor World, 2111 Millersville Rd., Lancaster, PA**

**Lancaster General Hospital**

4. Defendant shall not contact Plaintiff, or any other person protected under this order, by telephone or by any other means, including through third parties.

* * *

9. All provisions of this order shall expire on April 9, 2010.

PFA order dated 4/9/07.

On September 6, 2009, Appellant went to Hill's residence and was let in by his daughter, who felt sorry for him. N.T. at 3/24/10 at 9. Hill immediately told Appellant to leave the house, and she went upstairs to sleep on the belief that he was leaving. N.T. at 9. At some point thereafter, she awoke to find Appellant lying next to her in bed. N.T. at 9. Hill ordered him out of the house a second time and he left the room. She eventually fell back to sleep but was awoke again to find Appellant's hands around her neck choking her. N.T. at 9–10. With difficulty breathing, Appellant struggled to scream "get off of me," and Appellant released his hold. N.T. at 10. Hill ran down the steps first and went to the phone as Appellant followed. Their daughter was now yelling at Appellant as he threw a glass of orange juice in Hill's face and smashed a vase off the television. N.T. at 11. Hill then placed a call to police. N.T. at 11.

For Appellant's conduct, the Lancaster City Police charged Appellant with one count of ICC as follows:

1. 23 Pa.C.S.A. §§ 6101–6122.

The Defendant did assault the victim by choking her until she was close to unconsciousness. The Defendant did threaten to kill the victim while choking her. Defendant also threw orange juice on the victim. These acts were in direct violation of Protection from Abuse Order # CIL–06–00918 which was signed into effect by the Honorable Henry S. Kenderdine, Jr., on April 9, 2007. Said order is in effect until April 9th, 2010. This order specifically prohibits Defendant from abusing, threatening, or contacting the victim, Beth Hill.

ICC Complaint filed 9/6/09.

The case was called for a contempt trial on December 21, 2009, but on that date Appellant failed to appear, prompting the trial court to issue a bench warrant. At the same time, the Commonwealth moved to amend the complaint to include a second count of ICC based on Appellant's actions of both threatening and choking Hill.

The court then asked why a third count of ICC for entering the residence in violation of the PFA order could not be added, as well, to which defense counsel objected that only a single count of ICC could arise from the single episode described in the complaint. The Commonwealth moved to amend the complaint to three counts of ICC, but the court eventually reasoned that all physically abusive conduct should form the basis for one ICC count and the entry into the residence should form the basis for a second ICC count, and it approved the amendment of the complaint accordingly. See N.T. 12/21/09 at 1–5.

On March 24, 2010, Appellant was tried on two counts of ICC and was convicted on both. The court sentenced Appellant immediately to consecutive six month sentences of incarceration for an aggregate sentence of one year's incarceration. This timely notice of appeal followed.

As he did in his timely court-ordered Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), Appellant asks whether prosecuting him on two ICC counts arising from the same criminal episode, involving the same PFA order, and exposing him to an aggregate sentence greater than 6 months violated double jeopardy principles, deprived him of his right to trial by jury, and contravened the proper construction of the PFA Act. We hold that multiple ICC counts under these circumstances were both contemplated in the PFA Act and constitutional.

■ Appellant first claims that multiple charges and consecutive sentences in his case run contrary to a proper construction and interpretation of the PFA Act, with specific reference to 23 Pa.C.S.A. § 6114 and its provisions dealing with contempt by violation of a PFA order. Where, as here, our review is governed by the Statutory Construction Act, 1 Pa. C.S.A. §§ 1501 *et seq.*, we acknowledge that:

> our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review. *See* 1 Pa.C.S.A. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."); *Nationwide Ins. Co. v. Schneider,* 599 Pa. 131, 143, 960 A.2d 442, 448 (2008). Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. *Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). In this regard, "it is not for the courts to add, by interpretation, to a statute, a require-

ment which the legislature did not see fit to include." *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 59–60, 213 A.2d 277, 282 (1965). Consequently, "[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 525, 788 A.2d 955, 962 (2001) (internal quotations omitted).

*Commonwealth v. Wright,* —— Pa. ——, 14 A.3d 798, 814 (2011).

Section 6114 provides as follows:

**§ 6114 Contempt for violation of order or agreement**

**(a) General rule.**—Where the police, sheriff or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter, a foreign protection order or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.

\* \* \*

**(b) Trial and punishment.**—

(1) A sentence for contempt under this chapter may include:

(i)(A) a fine of not less than $300 nor more than $1,000 and imprisonment up to six months; or

(B) a fine of not less than $300 nor more than $1,000 and supervised probation not to exceed six months; and

(ii) an order for other relief set forth in this chapter.

\* \* \*

(3) The defendant shall not have a right to a jury trial on a charge of indirect criminal contempt. However, the defendant shall be entitled to counsel.

(4) Upon conviction for indirect criminal contempt and at the request of the plaintiff, the court shall also grant an extension of the protection order for an additional term.

\* \* \*

**(d) Multiple remedies.**—Disposition of a charge of indirect criminal contempt shall not preclude the prosecution of other criminal charges associated with the incident giving rise to the contempt, nor shall disposition of other criminal charges preclude prosecution of indirect criminal contempt associated with the criminal conduct giving rise to the charges.

23 Pa.C.S.A. § 6114(a), (b)(1)(i) and (ii),(3), and (4), and (d).

■ According to Appellant, Section 6114's imposition of a six month maximum sentence and the corresponding denial of the right to a jury trial, along with its provision in subsection (d) that an ICC disposition shall not preclude prosecution of other criminal charges arising from the same incident, evince a legislative intent to keep sentences in contempt proceedings to six months or less, reserving the most serious charges and sentences for a general criminal prosecution. Necessarily intertwined with this interpretation of Section 6114, Appellant continues, are constitutional principles of double jeopardy and trial-by-jury, which, respectively, bar multiple sentences for the same criminal conduct and provide the right to a trial by one's peers for "serious" offenses carrying a maximum sentence of greater than six months. Contrary to Appellant's argument, his aggregate sentence contravened neither the legislative intent behind Section 6114 nor the constitutional principles implicated in the statute.

First, nothing in Section 6114 either explicitly or implicitly forecloses prosecuting

a defendant on multiple ICC counts for multiple violations of a single PFA order. At its very outset, Section 6114(a) refers to bringing "charges" of ICC for violation of "a protection order," plain language which must be read to contemplate the possibility of multiple contempt charges from a single criminal episode in which a defendant violates several provisions of a PFA order.

Nor does Section 6114(d)'s provision of multiple remedies require a prosecutor to forego ICC charges and undertake a general criminal prosecution where the criminal episode involves more than one violation of a standing PFA order. Indeed, this subsection leaves discretion with the prosecutor as to which course to pursue first, if not solely, with the understanding that double jeopardy protections will call for application of traditional merger doctrine in sentencing where the same specific act forms the basis of both the ICC and general criminal convictions. Nothing in the language of subsection (d), therefore, imposes sentencing limits or restrictions beyond that which application of double jeopardy principles would impose.

Finally with respect to statutory interpretation, reading Section 6114 to permit multiple ICC charges where one overarching criminal episode contains many violations of a single PFA order is consistent with the intent of the Act to deter a wide array of abuses commonly directed against designated protected persons. Giving both discretion on how best to charge the contemnor/criminal and power to impose consecutive maximum contempt sentences equips the criminal justice system to address most effectively the peculiar needs of victims of domestic abuse. Achieving this end is clearly the goal of the PFA Act. Therefore discerning no way in which the prosecution and sentencing of Appellant ran contrary to the proper construction of

the PFA, we reject Appellant's statutory-based claim.

■ So, too, do Appellant's purely constitutional challenges to his sentence fail. First, he contends that in receiving consecutive sentences he was punished multiple times for one act of abuse. We disagree.

■ An appeal grounded in double jeopardy raises a question of constitutional law. This Court's scope of review in making a determination on a question of law is, as always, plenary. *Commonwealth v. Mattis,* 454 Pa.Super. 605, 686 A.2d 408, 410 (1996).

"The Double Jeopardy Clause, applicable to the States through the Fourteenth Amendment, provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *Commonwealth v. Decker,* 445 Pa.Super. 101, 664 A.2d 1028, 1029 (1995) (citing U.S. CONST. amend. 5). "Furthermore, the Double Jeopardy Clause [ ] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id.*

*Commonwealth v. Jackson,* 10 A.3d 341, 344–45 (Pa.Super.2010). Typically, to determine whether a defendant's protection from multiple punishments for the same offense has been violated, we apply the test set forth in *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Commonwealth v. Beckwith,* 449 Pa.Super. 433, 674 A.2d 276, 279 (1996). The U.S. Supreme Court explained this test as follows:

In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is pun-

ished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution. *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). We have long followed the "same-elements" test of *Blockburger* in this Commonwealth. *See Commonwealth v. Jackson*, 10 A.3d 341, 344–45 (Pa.Super.2010).

We understand Appellant's challenge to be atypical, however, relying not on a Blockburger test but instead on the argument that his two sentences stem from two provisions of one PFA order proscribing a single harm, namely, the abuse of Ms. Hill.[2] In this regard, his claim resembles those double jeopardy challenges involving the imposition of multiple sentences for convictions under different subsections of a statute proscribing one harm. We find such cases inapposite.

For example, it has been held that the DUI statute proscribes a single offense—driving drunk, though its subsections include several different ways in which a person may have driven drunk, such as driving with an elevated blood alcohol content and demonstrating an incapability for safe driving because of alcohol consumption. A defendant may therefore be charged and convicted of different subsections from a single act of drunk driving, but may not receive separate sentences therefor without suffering a deprivation of

his right to be free from double jeopardy. As we recognized in *Commonwealth v. McCoy*, 895 A.2d 18, 26–27 (Pa.Super.2006):

> When considering whether the merger doctrine bars separate sentences for convictions of two different provisions of the same statute, this Court stated:
>
> > To resolve this challenge we need not engage in the traditional merger analysis of lesser and greater included offenses. Instead *we examine the rationale favoring merger where a defendant has engaged in a single criminal act and he is found guilty of violating more than one section of a statute. If the sections that [the defendant] has violated are designed to proscribe a single harm and the defendant in violating them committed one act, then the sentences merge. Otherwise the sentences would constitute more than one punishment for the same crime and be impermissible as violative of double jeopardy.*
>
> [*Commonwealth v.*] *Williams* [, 871 A.2d 254] at 264 [ (Pa.Super.2005) ], *citing Commonwealth v. Dobbs*, 452 Pa.Super. 488, 682 A.2d 388, 391 (1996) (emphasis added). Accordingly, we find the merger was proper, and appellant's protections against double jeopardy were not violated. We thus reject this allegation of error.

*McCoy*, 895 A.2d 18, 24 (Pa.Super.2006).

While it may seem intuitive to say, in much the same way, that the PFA act proscribes but a single harm, i.e., the abuse of a protected person, closer inspec-

---

**2.** If Appellant's double jeopardy challenge required application of the *Blockburger* test, we would compare the elements of the particular violation underlying each ICC conviction rather than the general elements of the ICC charges. *See Leonard v. Smith*, 454 Pa.Super. 51, 684 A.2d 622 (1996) (holding that

double jeopardy inquiry concerns itself with the specific offenses at issue in the contempt proceeding rather than the ICC charge in general). As one ICC charge was based on Appellant's trespass onto Hill's property and the other was based on his physical assault of Hill, merger would clearly not apply.

tion of both the PFA act in general and the particular PFA order before us reveals this case is easily distinguishable from the DUI example above, as many varied criminal acts come under their ambit. Indeed, while a driver convicted of multiple subsections of DUI has still committed a single criminal act, driving while intoxicated, a PFA contemnor charged with multiple counts of ICC may very well have committed multiple criminal acts in the course of violating a PFA order. Applying merger analysis is therefore clearly appropriate in the former case, but inappropriate in the latter given the multiple crimes committed.

In the case *sub judice*, the trial court reviewed the PFA order at issue and determined that Appellant had violated it in two distinct ways: first, by entering Hill's residence when provision # 1 of the order had evicted and excluded him from the home and given exclusive possession of the home to Hill; and, second, by physically attacking Hill when provision # 2 of the order prohibited "abuse, ..., and attempt[ing] to use physical force that would be expected to cause bodily injury to Plaintiff ... in any place where she may be found." Clearly, it was the court's estimation that these two distinct acts were not simply two types of the same abuse but were, instead, two separate instances of abuse each deserving of its own charge and sentence. In light of our discussion above, we agree with the trial court's conclusion and, accordingly, reject Appellant's double jeopardy argument to the contrary.

 Appellant's remaining constitutional challenge goes to what he insists was the unlawful abrogation of his right to trial-by-jury. It is settled that:

> [t]he right to a jury trial under the Sixth Amendment to the United States Constitution and Article I, §§ 6, 9 of the Pennsylvania Constitution applies when a criminal defendant faces a sentence of

imprisonment exceeding six months. *Commonwealth v. Mayberry*, 459 Pa. 91, 327 A.2d 86, 89 (1974); *see also Lewis v. United States*, 518 U.S. 322, 327–28, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996). Charging a defendant with two counts of a petty offense, where each count has a maximum term of imprisonment of six months or less, and therefore carries an aggregate potential prison term greater than six months, does not transform the multiple petty offenses into one serious offense where the jury trial right would apply. *Id.*, at 327–28, 116 S.Ct. 2163.

*Commonwealth v. McMullen*, 599 Pa. 435, 443–444, 961 A.2d 842, 847 (2008). Under this precedent, Appellant had no right to a trial by jury simply because the two petty crimes with which he was charged exposed him to an aggregate sentence greater than six months.

For the foregoing reasons, we affirm judgment of sentence.

COLVILLE, J., files a concurring opinion.

## CONCURRING OPINION BY COLVILLE, J.:

Relying in part on this Court's decision in *Commonwealth v. Williams*, 753 A.2d 856 (Pa.Super.2000), Appellant argues that the sentence he received on March 24, 2010, is illegal. I believe that *Williams* provides us with the necessary guidance for this appeal and, upon its application, I concur with the Majority that Appellant is not entitled to relief.

After he was sentenced, Williams gave the sentencing judge the proverbial "finger" and stated, "F-k You." *Williams*, 753 A.2d at 859. The judge found Williams in contempt for the finger gesture and, separately, for the verbal remark. For each of the two contempt convictions, the judge stated his intent to sentence Williams to

five months and twenty-nine days in prison. The judge also asserted these sentences were to be served consecutively.[1]

On appeal, Williams argued, *inter alia,* that the consecutive sentences the trial judge imposed regarding the contempt convictions violated the double jeopardy clauses of the Pennsylvania and United States Constitutions. We agreed.

In support of our decision, we offered the following explanation:

> Our Supreme Court has emphatically recognized that these [constitutional] provisions prohibit multiple punishments for the same offense at trial. An individual may be punished only once for a single act which causes a single injury to the Commonwealth.
>
> Our Supreme Court has also acknowledged that impermissible multiple punishments for a single offense can take the form of consecutive sentences. Therefore, in [Williams'] case ..., in order for the Trial Court to have imposed multiple consecutive sentences, [Williams'] conduct must have constituted two separate offenses i.e. two separate contemptuous acts. Clearly [Williams'] conduct, though of a contemptuous nature, did not constitute multiple offenses allowing the imposition of separate punishments.
>
> [Williams'] verbal utterance and hand gesture were contemporaneously executed, and [Appellant's] hand gesture is universally recognized throughout Western civilization as having the same meaning as his foul utterance. As such, the statement and simultaneous gesture were so inextricably intertwined that they must be considered to have been

one unified act of contemptuous misconduct directed toward the Trial Court. Consequently, the unified act constituted but a single violation of 42 Pa.C.S.A. § 4132(3)[, *i.e.,* the criminal contempt statute]. The three consecutive sentences which the trial court imposed for this one contemptuous act were therefore violative of the principles of double jeopardy and they must be vacated. As a result we will remand for resentencing on one count of criminal contempt alone.

*Id.* at 864–65.

Appellant was convicted of two counts of indirect criminal contempt for violating a protection from abuse order. One of Appellant's convictions stemmed from his entrance into Ms. Hill's home; the other conviction resulted from Appellant threatening and assaulting Ms. Hill. In my view, Appellant's conduct[2] in entering into Ms. Hill's home is easily extricable from Appellant's conduct of threatening and assaulting Ms. Hill. The acts were separable in time and, more significantly, they violated the court's order in two different ways, thus causing two separate injuries to the Commonwealth. It was therefore legal to impose two sentences for these two acts of contemptuous conduct.

Accordingly, I agree that Appellant's judgment of sentence should be affirmed.

---

1. Despite the judge's stated intent, Williams was given three consecutive sentences for contempt related to his courtroom antics.

2. I do not believe it is necessary to characterize this conduct as otherwise criminal or as an act of abuse; it is sufficient that the conduct violated the PFA order.