J-S47027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DHRUVAL T. PATEL | : | |
| | : | |
| Appellant | : | No. 1218 EDA 2025 |

Appeal from the PCRA Order Entered April 28, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001190-2023

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY OLSON, J.: **FILED MAY 13, 2026**

Appellant, Dhruval T. Patel, appeals from the April 28, 2025 order entered in the Court of Common Pleas of Bucks County that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On January 5, 2024, Appellant pleaded guilty to trafficking in individuals (Count 1), statutory sexual assault – complainant less than 16 years of age (Count 2), involuntary deviate sexual intercourse – complainant less than 16 years of age (Count 3), unlawful contact with minor – sexual offenses (Count 4), sexual abuse of children (Count 5), indecent assault – complainant less than 16 years of age (Count 6), and corruption of minors – sexual

offenses (Count 8).[1]  The trial court summarized the circumstances that led

to Appellant's conviction as follows:

> In March 2022, Detective Joseph Camp [("Detective Camp")] of the Newtown Township Police Department in Bucks County[, Pennsylvania,] was contacted by the Marlboro Township, New Jersey Police Department in reference to a sexual assault investigation involving a minor, C.D.  [The investigation concerned] an incident alleged to have occurred in Newtown Township[, Pennsylvania].  At that time, Marlboro [Township] Police Department detectives were investigating another reported sexual assault [that allegedly occurred] in Marlboro [Township], New Jersey[, involving Appellant and C.D.  During the course of the investigation, police detectives determined] that Appellant was involved in several sexual incidents in both Newtown Township and Marlboro Township [related to C.D.  Detective] Camp subsequently interviewed C.D. and obtained the following information.
>
> In February 2020, C.D., who was [13] years old at the time, was asked by her friend, another minor, if she was interested in a "sugar daddy[.]"  C.D. agreed, and her friend put her in touch with Appellant *via* [electronic mail ("email")].  Appellant and C.D. initially communicated *via* email, and both individuals discussed the "sugar daddy relationship[,]" as well as sending explicit photos for money.  C.D. informed Appellant of her age, and Appellant claimed that he was "[19] years old[.]"
>
> In June 2020, Appellant asked for C.D.'s Snapchat username,[2] and they began to communicate on the social media platform. Appellant offered to pay C.D. for explicit pictures and videos, but stated that he would only pay her in cash.  C.D. received photo[graph]s of Appellant's penis and videos of him masturbating. In return, she would send Appellant photo[graph]s

---

[1]  18  Pa.C.S.A.  §§ 3011(a)(1),  3122.1(b),  3123(a)(7),  6318(a)(1), 6312(b)(1), 3126(a)(8), and 6301(a)(1)(ii), respectively.

[2] Snapchat is a social media and instant messaging application in which the pictures and messages posted to the application are only visible to the recipient for a short period of time.

of her breasts, vagina, and fully unclothed body. Appellant and C.D. also participated in live video calls *via* Snapchat, in which Appellant would masturbate as he instructed C.D. what to do with her body. Specifically, Appellant requested videos of C.D. masturbating while using a makeup brush.

At the beginning of Fall 2020, Appellant and C.D. started to meet in person in Newtown Township. At that time, C.D. was [14] years old and Appellant was [31] years old. Appellant told C.D. that he "worked for various businesses [near where C.D. lived,]" and he would pick up C.D. in the afternoon, down the street from her residence.

During the COVID-19 pandemic, C.D.'s classes were remote, and [] she was required to complete afternoon walks in her neighborhood for gym class. C.D. advised [Detective] Camp that during these walks, Appellant would pick up C.D. in his vehicle.

C.D. informed [Detective] Camp, that when she and Appellant first met in person, Appellant told C.D. to lie down in the back seat of his vehicle so she could not be seen. Appellant then drove them to [a business located] in Newtown Township, where he parked in a secluded area of the parking lot before he joined C.D. in the backseat. While in the backseat, Appellant told C.D. to perform oral sex on him as he digitally penetrated her vagina. After Appellant ejaculated into her mouth, he paid C.D. between [20 and 40] dollars and drove her back to her residence in Newtown Township.

It was further disclosed to [Detective] Camp that Appellant and C.D. met three [] additional times under similar circumstances, in which Appellant paid C.D. between [20 and 40] dollars after each sexual encounter. During their third encounter, the area where Appellant typically parked was occupied, so he drove C.D. through her neighborhood as she performed oral sex on him and he digitally penetrated her vagina. When they met for the fourth time, C.D. performed oral sex on Appellant in the [business parking lot]. They had planned to have sexual intercourse afterward, however, they decided to leave when a truck parked next to them.

In addition to the four [] meetings in Appellant's vehicle, Appellant and C.D. met two [] more times at C.D.'s residence, in Newtown Township, while she was home alone. During their first in-home sexual encounter, Appellant and C.D. had sexual intercourse on the dining room table. Appellant did not wear a condom and

ejaculated inside of C.D.'s vagina.  During their second in-home sexual encounter, Appellant and C.D. had sexual intercourse on the living room couch, and Appellant ejaculated into C.D.'s mouth. C.D. stated to [Detective] Camp that Appellant paid her approximately [$100.00] after each visit.

During the interview, C.D. informed [Detective] Camp that she continued to exchange photo[graph]s and videos with Appellant as recently as 2022.  [Detective] Camp viewed C.D.'s cell[ular tele]phone and observed similar videos on Snapchat.  C.D. indicated to [Detective] Camp, that the videos were sent to Appellant from her residence in Newtown Township.  [Detective] Camp was advised by C.D. that Appellant had previously posted on Snapchat and asked if anyone was looking for a sugar daddy. He also asked C.D. if she had any interested friends.

On March 16, 2022, [Federal Bureau of Investigation ("FBI")] Special Agent Danica Lute met with C.D. and presented her with a photographic lineup, in which C.D. positively identified Appellant as the perpetrator.  Appellant was interviewed at the Marlboro Township, New Jersey Police Department on March 18, 2022. During the interview, Appellant confessed to exchanging explicit videos with C.D. *via* Snapchat, including videos of him masturbating.  Initially, Appellant indicated that he did not have sex with C.D. in Pennsylvania, however, later in the interview, he admitted that they had sex in both Pennsylvania and New Jersey, and he gave C.D. money after their sexual encounters.

PCRA Court Opinion, 6/20/25, at 1-5 (footnotes omitted).  On April 10, 2024, the trial court sentenced Appellant to 5½ to 11 years' incarceration to be followed by 3 years' probation for his conviction of Count 3.  The trial court imposed no further punishment for Appellant's convictions of Counts 1 - 2 and Counts 4 - 7.  Appellant was subjected to lifetime registration as a Tier III sexual offender under Subchapter H of the Sex Offender Registration and Notification Act ("SORNA"), codified at 42 Pa.C.S.A. §§ 9799.10 – 9799.41. The trial court also ordered Appellant's sentence to run concurrently with the sentence that was to be imposed by the county court in New Jersey for any

criminal conviction in that state. Appellant did not challenge his judgment of sentence on direct appeal. Therefore, Appellant's judgment of sentence became final on May 10, 2024, upon expiration of the time in which to seek appellate review. Pa.R.A.P. 903(a) (stating, a notice of appeal must be filed "within 30 days after the entry of the order from which the appeal is taken"); *see also* 42 Pa.C.S.A. § 9545(b)(3) (stating, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review").

On March 19, 2025, Appellant filed a PCRA petition, his first.[3] In his petition, Appellant asserted that trial counsel was ineffective for failing to "advise [Appellant] on the merits of potential defenses and [for affirmatively recommending that Appellant] plead guilty to [] all of the charges even though the prosecution was precluded by 18 Pa.C.S.[A.] § 111 [because of an alleged prior prosecution in New Jersey based upon the same conduct]."[4] PCRA Petition, 3/19/25, at ¶34. On March 24, 2025, the PCRA court directed the Commonwealth to file a response to Appellant's petition. The Commonwealth filed its answer on April 2, 2025. On April 7, 2025, the PCRA court provided Appellant notice, pursuant to Pennsylvania Rule of Criminal Procedure 907, of

_____

[3] At the time Appellant filed his first PCRA petition, he was represented by privately-retained counsel, Zak T. Goldstein, Esquire.

[4] When Appellant entered his guilty plea, he was represented by Keith J. Bidlingmaier, Esquire.

its intent to dismiss Appellant's petition without a hearing on the ground that trial counsel cannot be ineffective for failure to raise a meritless claim. Rule 907 Notice, 4/7/25. That same day, April 7, 2025, Appellant filed a response to the PCRA court's Rule 907 notice. On April 28, 2025, the PCRA court denied Appellant's petition seeking collateral relief. This appeal followed.[5]

Appellant raises the following issue for our review:

Whether trial counsel was ineffective in recommending a guilty plea instead of moving to dismiss the charges in this case because the charges were barred by 18 Pa.C.S.[A.] § 111 given that Appellant [faced prior prosecution] in New Jersey for the exact same conduct under statutes designed to prevent the exact same evil of child sexual exploitation[?]

Appellant's Brief at 4.

Our scope and standard of review of an order denying a PCRA petition is well-settled. Proper appellate review of a PCRA court's dismissal of a petition is limited to an examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those

_____

[5] Appellant and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925.

- 6 -

findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

Appellant asserts that "trial counsel provided [] ineffective assistance of counsel by recommending a guilty plea[, instead of recommending] that Appellant move to dismiss [his Pennsylvania] charges pursuant to 18 Pa.C.S.A. § 111." Appellant's Brief at 17. Appellant contends that if he had "filed a motion to dismiss [the charges] prior to sentencing, the [trial] court would have been compelled to grant [the motion], and the case would have been dismissed." *Id.* Appellant argues that trial counsel "had a professional obligation to advise Appellant on the merits of a potential motion to dismiss before recommending [that Appellant accept the plea agreement.]" *Id.*

"It is well-established that counsel is presumed effective[.]" *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012), *citing Strickland v. Washington*, 466 U.S. 668, 687-691 (1984). To plead and prove a claim of ineffective assistance of counsel, "a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective[ly] reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014); *see also Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). "A claim of

ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010). "In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued[. R]ather, we must examine whether counsel's decision[] had any reasonable basis." ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). A petitioner establishes prejudice when he or she demonstrates "that there is a reasonable probability that, but for counsel's [acts or omissions], the result of the proceeding would have been different." ***Commonwealth v. Johnson***, 966 A.2d 523, 533 (Pa. 2009).

Appellant asserts that he would have succeeded on the merits of his underlying claim that trial counsel should have moved to dismiss his Pennsylvania charges pursuant to Section 111, rather than advise Appellant to accepting a plea agreement. Appellant's Brief at 23. Appellant contends that "[t]rial counsel had no reasonably strategic basis for recommending Appellant plead guilty to the Pennsylvania charges and receive a sentence longer than that which he had already received from the prior [New Jersey] prosecution[.]" ***Id.*** Appellant avers that he "suffered prejudice because he was convicted in this case instead of having the charges dismissed." ***Id.***

It is well-established that

a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the

defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Allen*, 833 A.2d 800, 802 (Pa. Super. 2003) (citations, original brackets, and quotation marks omitted), *appeal denied*, 860 A.2d 488 (Pa. 2004); *see also Commonwealth v. Timchak*, 69 A.3d 765. 769 (Pa. Super. 2013); *Commonwealth v. Ramiriz-Contreras*, 320 A.3d 756, 764 (Pa. Super. 2024). "The law does not require that the defendant be pleased with the outcome of his [or her] decision to enter a plea of guilty[.] All that is required is that his [or her] decision to plead guilty be knowingly, voluntarily, and intelligently made." *Timchak*, 69 A.3d at 770 (citation and original brackets omitted).

Appellant's ineffectiveness claim implicates the applicability of Section 111 of the Crimes Code, which states,

**§ 111.  When prosecution barred by former prosecution in another jurisdiction**

When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is based on the same conduct unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact

not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(ii) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted.

18 Pa.C.S.A. § 111.

The PCRA court, in finding that Appellant's underlying claim was without arguable merit because Section 111 was "wholly inapplicable[,]" explained that

[w]hen reading the relevant statutes [(referring to Section 109 and Section 111 of the Crimes Code),] in conjunction, the first inquiry is whether Appellant's Pennsylvania conviction is considered the "subsequent prosecution." If the [Pennsylvania] conviction is determined to be the "first prosecution[,]" then Section 111 has no applicability[.]

In the present case, the record undoubtedly establishes that Appellant was first convicted in Pennsylvania. During [his Bucks County] guilty plea hearing on January 5, 2024, Appellant acknowledged that the charges to which he was pleading involved conduct similar to the underlying charges [confronting him] in Monmouth County, New Jersey[. However, Appellant did not enter a guilty plea in New Jersey until three] days later on January 8, 2024. Despite this clear prosecution sequence, Appellant erroneously asserted in his PCRA petition that his Pennsylvania conviction constituted the "subsequent prosecution" under Section 111, based upon the fact that he was initially charged in New Jersey.

[The PCRA] court, however, finds that Appellant's assertion is unsupported by the record and is contradictory to his own

- 10 -

exhibits. [Appellant's conviction in Pennsylvania] constituted the "first prosecution[,]" defined by 18 Pa.C.S.[A.] §§ 109 and 111, as Appellant's guilty plea in Pennsylvania preceded his guilty plea entered in New Jersey. Appellant's argument that his conviction [in Pennsylvania] should be precluded as both his Pennsylvania and New Jersey cases covered the same conduct need not be addressed, as Section 111 does not statutorily bar the charges against him, given that Pennsylvania was considered the "first prosecution."

PCRA Court Opinion, 6/20/25, at 11 (extraneous capitalization and record citations omitted). We agree.

It is well-established that "Section 111 only applies to a subsequent prosecution in this Commonwealth." *Commonwealth v. Ramirez*, 533 A.2d 116, 118 (Pa. Super. 1987), *appeal denied*, 548 A.2d 255 (Pa. 1988). "A 'prosecution' has been defined as 'a proceeding instituted for the purpose of determining the guilt or innocence of a person charged with crime.'" *Ramirez*, 533 A.2d at 118 (ellipsis omitted), *citing* BLACK'S LAW DICTIONARY at 1099 (5th ed. 1981). Based upon statutory interpretation, the *Ramirez* Court went on to find that "[a] prosecution against a defendant, consequently, is not completed, and therefore cannot be a 'former prosecution,' until a defendant is acquitted or convicted." *Ramirez*, 533 A.2d at 119 (basing its analysis on an examination of the terms "former prosecution" and "subsequent prosecution" as interpreted in the context of Section 110 of the Crimes Code). In reaching its conclusion, the *Ramirez* Court first looked to our Supreme

- 11 -

Court's decision in **Commonwealth v. Beatty**, 455 A.2d 1194 (Pa. 1983).[6]

The **Ramirez** Court noted that, in **Beatty**, our Supreme Court held that the terms "former prosecution" and "subsequent prosecution" within the context of Section 110(1)(ii) "did not depend on the time the particular offenses were filed[,]" but, rather, referred to the "completed prosecution" and the "pending prosecution," respectively.[7] **Ramirez**, 533 A.2d at 119, *citing* **Beatty**, 455

_____

[6] Certain aspects of the **Beatty** decision were subsequently superseded by a legislative amendment to Section 110. **See Commonwealth v. Johnson**, 247 A.3d 981, 985 (Pa. 2021) (stating that, "in 2002, the Legislature modified Section 110(1)(ii) to remove the 'within the jurisdiction of a single court' proviso"). This amendment to Section 110 is of no consequence to our reliance on separate and distinct aspects of the decisions in **Ramirez**, *supra*, or **Beatty**, *supra*, for the purposes of defining the terms "former prosecution" and "subsequent prosecution" within the context of Section 111.

[7] At the time of our Supreme Court's decision in **Beatty**, Section 110(1)(ii) read as follows:

> **§ 110. When prosecution barred by former prosecution for different offense**
>
> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:
>
> . . .
>
> > (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the

- 12 -

A.2d at 289. The **Ramirez** Court concluded that **Beatty's** "interpretation of the terms 'former prosecution' and 'subsequent prosecution' [] should apply also to Section 111." **Ramirez**, 533 A.2d at 119.

We find the conclusion reached by the **Ramirez** Court to be further supported by a plain-reading of Section 111. As set forth *supra*, the "first prosecution" is a prosecution that results in either an acquittal or conviction as defined by Section 109. 18 Pa.C.S.A. § 111(1). Section 109 states that a prosecution results in a conviction when "the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, **or a plea of guilty accepted by the [trial] court**." 18 Pa.C.S.A. § 109(3) (emphasis added). Thus, a prosecution cannot be a "first prosecution" **until** the prosecution has resulted in, *inter alia*, the acceptance of a guilty plea by the trial court. **See Ramirez**, 533 A.3d at 119 (finding that, a prosecution is completed when the trial court accepts the defendant's plea of guilty); **see also Commonwealth v. Davis**, 207 A.3d 341, 345 (Pa. Super. 2019) (stating, a "'prosecution is completed when a defendant is acquitted or convicted"), *aff'd*, 243 A.3d 7 (Pa. 2020); **Beatty**, 455 A.2d at

_____

appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense[.]

18 Pa.C.S.A. § 110(1)(ii) (effective Dec. 6, 1972, to Aug. 27, 2002).

289. The term "first prosecution" does not refer to the first set of criminal charges **filed** against a defendant but, rather, refers to the first set of criminal charges that **result in a criminal conviction** because, *inter alia*, a defendant entered a plea of guilty to the criminal charges and the trial court accepted the plea. Imposition of a judgment of sentence is not a requirement for a "prosecution" to qualify as a "first prosecution" for purpose of Section 111.

In the case *sub judice*, the Marlboro Township Police Department charged Appellant, on March 18, 2022, with various criminal offenses in New Jersey stemming from his inappropriate sexual contact with C.D. On September 21, 2022, the Newtown Township Police Department charged Appellant with the aforementioned criminal offenses in Pennsylvania based upon his inappropriate sexual contact with C.D. On January 5, 2023, a grand jury sitting in New Jersey indited Appellant on the charges filed by the Marlboro Township Police Department. On March 13, 2023, the Commonwealth filed a bill of information against Appellant. On January 5, 2024, Appellant pleaded guilty in the Court of Common Pleas of Bucks County, as set forth *supra*. On January 8, 2024, three days after he entered his plea of guilty in Pennsylvania, Appellant pleaded guilty to second degree statutory sexual assault in New Jersey.[8] On April 10, 2024, Appellant was sentenced by the Pennsylvania trial court, as set forth *supra*, for his criminal convictions in Pennsylvania. On April 19, 2024, Appellant was sentenced by the New

_____

[8] N.J.S. § 2C:14-2(c)(4).

Jersey court for his New Jersey conviction.[9] On appeal, Appellant's position is that, because he was first charged in New Jersey, his New Jersey "prosecution" constituted a "former prosecution" for the purpose of Section 111.

Simply stated, Appellant's interpretation of Section 111 and related case law is incorrect. The chronology of charging events is not material to determining which prosecution is the "former prosecution" and which constitutes the "subsequent prosecution." Rather, we look to see which prosecution resulted in a conviction, as defined by Section 109. *See* 18 Pa.C.S.A. § 111(1) (explaining that, a prosecution in another state, or "first" prosecution, bars a subsequent Pennsylvania prosecution where, *inter alia*, the first prosecution results in an acquittal or in a conviction as defined in Section 109 and the subsequent Pennsylvania prosecution is based on the same conduct). In this instance, Appellant's prosecution in Pennsylvania is the "former prosecution" for purpose of Section 111 because Appellant entered a plea of guilty, which was accepted by the trial court, for the criminal charges filed against him in Pennsylvania **before** he entered a plea of guilty for the criminal charges filed against him in New Jersey. By its terms, Section 111 bars only a subsequent Pennsylvania prosecution, not a first or former Pennsylvania prosecution. Appellant's Pennsylvania prosecution was not a "subsequent prosecution" by the Commonwealth because the Pennsylvania prosecution was the first prosecution to result in a conviction, as defined by

_____

[9] The New Jersey county court sentenced Appellant to five years' incarceration.

Section 109. As such, we concur with the PCRA court that Appellant's criminal conviction in Pennsylvania did not trigger any protection contemplated by Section 111. Because Section 111 was not applicable to Appellant's underlying claim, we concur with the PCRA court that Appellant's trial counsel was not ineffective for failing to raise a claim that lacked merit.

Relatedly, to the extent that Appellant claims that trial counsel was ineffective for failing to challenge the sentence imposed by the Court of Common Pleas of Bucks County on the ground that the sentence violated Appellant's right against double jeopardy and, therefore, was illegal, we again agree that Appellant is not entitled to collateral relief. *See* Appellant's Brief at 23 (arguing that trial counsel's ineffectiveness led to Appellant receiving "a sentence longer than that which had already received from the prior [New Jersey] prosecution"); *see also* Appellant's Reply Brief at 8 (stating, trial counsel's ineffectiveness "resulted in Appellant receiving a duplicate sentence for conduct already prosecuted in New Jersey").

"The Double Jeopardy Clause, applicable to the [s]tates through the Fourteenth Amendment [of the United States Constitution], provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *Commonwealth v. Jackson*, 10 A.3d 341, 344-345 (Pa. Super. 2010) (citation omitted); *see also* U.S. CONST. amend. V. Simply stated, "the Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal[, it] protects against a second prosecution for the same offense after conviction[, and it] protects against multiple

punishments for the same offense." ***Jackson***, 10 A.3d at 345 (citation and original brackets omitted); ***see also Commonwealth v. Gross***, 232 A.3d 819, 835 (Pa. Super. 2020) (*en banc*) (stating, "[a]s a general rule, [t]he double jeopardy protections afforded by the United States and Pennsylvania Constitutions are coextensive and prohibit successive prosecutions and multiple punishments for the same offense[;]" the Pennsylvania Constitution provides greater protections only in cases involving allegations of prosecutorial misconduct (original quotation marks and citation omitted)), *appeal denied*, 242 A.3d 307 (Pa. 2020).

Here, as discussed *supra*, Appellant was sentenced for his Pennsylvania criminal convictions before a sentence was imposed by the New Jersey court for his criminal conviction in that state. Without consideration of whether, or not, the Pennsylvania and New Jersey sexual offenses for which Appellant was convicted involved the same elements and, therefore, constituted the "same offenses,"[10] the protections afforded by the Double Jeopardy Clause did not bar the imposition of Appellant's Pennsylvania sentence because it was the first sentence to be imposed upon Appellant. ***See Jackson***, 10 A.3d at 345

_____

[10] To determine whether a defendant's double jeopardy protection from multiple punishments for the same offenses has been violated, a court must apply the "same-elements test" first announced in ***Blockburger v. United States***, 284 U.S. 299 (1932). ***Hill v. Randolph***, 24 A.3d 866, 871 (Pa. Super. 2011). Under the ***Blockburger*** or same-elements test, a court "inquires whether each offense contains an element not contained in the other[. If] not, they are the 'same offense' and double jeopardy bars additional punishment[.]" ***Hill***, 24 A.3d at 872, *quoting* ***United States v. Dixon***, 509 U.S. 688, 696 (1993).

- 17 -

(stating, the double jeopardy clause protects against "multiple punishments for the same offense"). In other words, Appellant's double jeopardy challenge cannot lie with his Pennsylvania sentence because it was the first-in-time sentence to be imposed upon Appellant and, therefore, did not run afoul of any protection under the Double Jeopardy Clause against multiple punishments for the same offense.

For the reasons set forth herein, we concur with the PCRA court that Appellant's trial counsel cannot be ineffective for failure to raise an underlying claim that was without merit. Therefore, we discern no error of law or abuse of discretion in the PCRA court's order that dismissed Appellant's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/13/2026